```
                              F I L E D
                         CLERK, U.S. DISTRICT COURT

                              1/30/2024

                         CENTRAL DISTRICT OF CALIFORNIA
                         BY: _____TV_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>JONATHAN WILLIAM MIKULA,<br>  aka "William Mikula,"<br>CHRISTIAN FERNANDEZ,<br>  aka "Christian Crockwell," and<br>AMIT RAJ BERI,<br>  aka "Raj Beri,"<br><br>             Defendants. | No. CR 2:24-cr-00063-SB<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 371: Conspiracy to Tout Securities for Undisclosed Compensation; 15 U.S.C. §§ 78q(b), 77x: Touting Securities for Undisclosed Compensation; 18 U.S.C. § 2(b): Willfully Causing an Act to be Done] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

1.   At times relevant to this Information:

Background

a. Palm Beach Venture was a subscription investment newsletter operating in Florida, Georgia, and elsewhere. Palm Beach Venture had subscribers located throughout the United States, including in Los Angeles County, and communicated with those subscribers through interstate wire communications.

b. Palm Beach Venture published promotional pieces for offerings of securities, including securities traded "over-the-counter" ("OTC"), i.e., lower-priced, illiquid securities traded not on public exchanges but instead through "market makers," as well as unregistered securities offered pursuant to Regulation A of the Securities Act of 1933 ("Regulation A"), which permitted the offering and sale of certain securities to the public under more limited disclosure requirements than would traditionally be required for publicly reporting companies.

c. Pursuant to Section 17(b) of the Securities Act of 1933 (15 U.S.C. § 77q(b)), those who received consideration directly or indirectly from an issuer for publishing, giving publicity to, or circulating any advertisement or communication that describes the issuer's security offered for sale were required to fully disclose the consideration received.

d. Subscribers to Palm Beach Venture made up a significant percentage of funds raised through offerings described and promoted by Palm Beach Venture.

Conspirators and Relevant Entities

e. Defendant JONATHAN WILLIAM MIKULA, also known as ("aka") "William Mikula," was a resident of Woodstock, Georgia, and worked as an analyst for Palm Beach Venture. As an analyst for Palm

Beach Venture, defendant MIKULA influenced and determined which securities offerings Palm Beach Venture would describe and promote and drafted such descriptions and promotions.

f.   Defendant CHRISTIAN FERNANDEZ, aka "Christian Crockwell," was a resident of Smyrna, Georgia, and a business and personal associate of defendant MIKULA.

g.   Defendant AMIT RAJ BERI, aka "Raj Beri," was a resident of West Hollywood, California, and Florida, and was Chief Executive Officer of a Delaware corporation with a principal place of business in Beverly Hills, California.

h.   Coconspirator Avtar Dhillon was the Chair of the Board of Directors, the Chief Executive Officer, and a significant shareholder of Emerald Health Sciences ("EHS"), a private company incorporated and headquartered in Vancouver, Canada, that held itself out as a life science investment company.

i.   EHS owned a majority interest in Emerald Health Pharmaceuticals ("EHP"), a life sciences company headquartered in San Diego, California.  As an officer and significant shareholder of EHS, Dhillon enjoyed and exerted significant influence over EHP and served as an EHP board member.

j.   Coconspirator 1 was a resident of Beverly Hills and Chief Executive Officer and cofounder of a Canadian company operating out of Oregon, California, Nevada, and Canada (the "Canadian Issuer").

k.   Coconspirator 2 was a resident of Venice, California, and the founder, Chief Executive Officer, and Chairperson of a Delaware corporation with a principal place of business in Los Angeles (the "Venice Issuer").

l.    Coconspirator 3 was a resident Truckee, California, and the founder and Chief Executive Officer of a Delaware Corporation with a principal place of business in Miami, Florida (the "Miami Issuer").

m.    Coconspirator 4 was the Chief Executive Officer of an investment platform (the "Investment Platform") with a principal place of business in New York that aggregated, curated, and presented securities and other investment opportunities to investors across the United States, including Regulation-A offerings.

Promotion of the Issuers

n.    Defendants MIKULA, FERNANDEZ, and BERI, along with Coconspirator 1, Coconspirator 2, Coconspirator 3, Coconspirator 4, Coconspirator Dhillon, and others, knew and understood that placement in Palm Beach Venture provided issuers with a valuable avenue of exposure to potential investors.

o.    From in or around March 2019 through in or around March 2021, EHP raised approximately $60,000,000 in gross investment proceeds through the sale of 10,422,776 shares pursuant to a sale of securities offered under Regulation A of the Securities Act of 1933 ("EHP's offering"). Approximately $32,500,000 of the funds raised through EHP's offering resulted from Palm Beach Venture's promotion of EHP.

p.    Palm Beach Venture first promoted the Canadian Issuer in February 2021 with a series of promotions that continued through November 2021.

q.    The Venice Issuer qualified to conduct a Regulation A offering in or around March 2018 and made such an offering between in or around March 2018 and in or around December 2022. Palm Beach

Venture promoted the Venice Issuer between in or around April 2020 and in or around August 2021. During the promotion period, the Venice Issuer raised approximately $20 million, with approximately at least $6 million in investment proceeds resulting from Palm Beach Venture's promotion of the Venice Issuer.

　　　　r.　The Miami Issuer first qualified to conduct a Regulation A offering in or around July 2020 and offered securities under that qualification thereafter in 2020 and 2021. Palm Beach Venture promoted the Miami Issuer on or around September 8, 2020, which promotion resulted in raising approximately $30 million in investor funds.

　　　　s.　The Investment Platform collected percentages of funds raised and securities offered through its platform.

B.　OBJECT OF THE CONSPIRACY

　　2.　Beginning no later than in or about December 2019, and continuing through at least in or about September 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants MIKULA, FERNANDEZ, and BERI, and Coconspirator 1, Coconspirator 2, Coconspirator 3, Coconspirator 4, and Coconspirator Dhillon, conspired with one another and others known and unknown, knowingly and willfully, by the use of the means and instruments of transportation and communication in interstate commerce, to commit an offense against the United States, namely, to publish, give publicity to, and circulate notices, circulars, advertisements, articles, letters, investment services, and communications which, though not purporting to offer securities for sale, described such securities for a consideration received and to be received, directly and indirectly, from issuers without fully

5

disclosing the receipt, whether past or prospective, of such consideration and the amount thereof, in violation of Title 15, United States Code, Sections 77q(b) and 77x.

C.    MANNER AND MEANS OF THE CONSPIRACY

     3.    The object of the conspiracy was carried out, and was to be carried out, in substance, as follows:

         a.    Knowing that placement within and promotion by Palm Beach Venture permitted securities issuers to reach additional investors and raise additional funds, and knowing that Palm Beach Venture would make the materially misleading representation that neither it "nor its affiliates receive compensation for bringing this deal to you," defendant MIKULA would agree to write and place articles and other promotional pieces regarding the securities of specific issuers (the "Collusive Issuers") on the understanding and agreement that such issuers and their associates would pay undisclosed direct and indirect compensation to him, defendants FERNANDEZ and BERI, and others.

         b.    To promote the conspiracy and disguise the source, purpose, and nature of the illegal payments, defendants MIKULA and BERI, along with Coconspirator 1, Coconspirator 2, Coconspirator 3, Coconspirator 4, Coconspirator Dhillon, and others, would arrange for defendant FERNANDEZ to receive direct compensation for both himself and defendant MIKULA. Defendant FERNANDEZ would then transfer the funds through a series of domestic and foreign bank accounts before returning a portion of the funds to defendant MIKULA through nominee bank transactions, cash withdrawals, disguised check payments and wire transfers, and gifts, including luxury items such as a Range Rover automobile.

   c. Defendant FERNANDEZ would open, form, and operate a series of domestic and foreign business entities and bank accounts for the purpose of receiving the payments generated by the conspiracy and concealing the nature, location, source, ownership, and control of those payments.  In exchange, defendant FERNANDEZ would take a significant percentage -- sometimes half -- of these funds.

   d. In exchange for defendant MIKULA's touting of particular securities issuances through Palm Beach Venture, defendant BERI, Coconspirator 2, Coconspirator 3, and others, would provide defendants MIKULA and FERNANDEZ with undisclosed, indirect compensation, including lavish meals, beverages, and entertainment.

  4. As a result of the conspiracy, Coconspirator Dhillon, Coconspirator 1, Coconspirator 2, Coconspirator 3, Coconspirator 4, and others, raised tens of millions of dollars in investor funds through securities offerings described and promoted by Palm Beach Venture without required disclosures that such promotions had been obtained through direct and indirect compensation to defendant MIKULA.

  5. As a result of the conspiracy, defendants MIKULA, FERNANDEZ, and BERI and others received in the aggregate more than $4.2 million in undisclosed and misrepresented payments, as well as hundreds of thousands of dollars of compensation in the form of undisclosed entertainment and illicit services.

D. <u>OVERT ACTS</u>

  6. In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants MIKULA, FERNANDEZ, and BERI, along with Coconspirator 1, Coconspirator 2, Coconspirator 3, Coconspirator 4, Coconspirator Dhillon, and others,

committed the following overt acts, among others, in the Central District of California and elsewhere:

<u>Overt Act No. 1</u>:   On December 11, 2019, defendants MIKULA, BERI, and FERNANDEZ met in Las Vegas, Nevada, where defendant MIKULA received undisclosed compensation in the form of entertainment and discussed the possibility of future undisclosed monetary payments for promoting issuers including EHP.

<u>Overt Act No. 2</u>:   On January 14, 2020, in an electronic communication, defendant BERI told Coconspirator Dhillon, "I spoke to [defendant MIKULA] at 1pm and I can guarantee some things if you can look after him, which I told him you can," to which Coconspirator Dhillon responded, "Call when you can."

<u>Overt Act No. 3</u>:   On January 22, 2020, in an electronic communication, Coconspirator Dhillon informed Coconspirator 2, "All good on our end hope [sic] same."

<u>Overt Act No. 4</u>:   On March 2, 2020, defendant MIKULA caused Palm Beach Venture to publish a "Note" touting EHP titled, "Curing Incurable Diseases and Giving Us Over 4,900% Potential Gains," which falsely stated, "[n]either the [Subscription Newsletter] nor its affiliates receive compensation for bringing this deal to you. As publishers of financial information, we make general recommendations based on our own analysis."

<u>Overt Act No. 5</u>:   On March 6, 2020, defendants MIKULA and BERI met with Coconspirator Dhillon at a West Hollywood restaurant to discuss the parameters of payment by EHP for Palm Beach Venture's promotion of EHP.

<u>Overt Act No. 6</u>:   On March 10, 2020, in an electronic communication with Coconspirator 2, Coconspirator Dhillon said he

would "nudge" an EHP executive who had failed to resume negotiations regarding payments in furtherance of the conspiracy.

Overt Act No. 7:  On March 10, 2020, in an electronic communication, defendant BERI informed Coconspirator Dhillon that he had received an email from the EHP executive but complained that it was "very vague with no mention of shares or the initial $100k invoice," adding, "I don't want you to miss out on the promo spot as everyone is fighting over it.  I've had our friend ask about this twice since Sunday."

Overt Act No. 8:  In April 2020, defendant MIKULA directed defendant BERI to instruct Coconspirator 2 to enter into a sham consulting agreement for "marketing services" with the Venice Issuer, which in fact would pay defendants MIKULA, FERNANDEZ, and BERI and others disguised compensation for Palm Beach Venture's promotion of the Venice Issuer's Regulation A offering.

Overt Act No. 9:  On April 3 and 4, 2020, in a series of electronic communications, defendant BERI asked Coconspirator 2 whether Coconspirator 2 had received the sham consulting agreement and requested that Coconspirator 2 review it.

Overt Act No. 10:  On April 6, 2020, defendant MIKULA caused Palm Beach Venture to promote the Venice Issuer's Regulation A offering.

Overt Act No. 11:  On June 3, 2020, EHP entered into a sham consulting agreement for the benefit of defendant BERI but nominally in the name of defendant BERI's brother.

Overt Act No. 12:  On July 31, 2020, EHP entered into a sham consulting agreement with defendant BERI.

Overt Act No. 13: Between September 3, 2020, and October 16, 2020, the Venice Issuer paid $150,000 to a Canadian entity ("Canadian Entity 1"), which functioned as a financial intermediary between Coconspirator 1 and defendants FERNANDEZ and MIKULA.

Overt Act No. 14: On December 7, 2020, EHP wired $500,000 to a bank account controlled by defendant BERI to disguise defendant MIKULA's receipt of payment for promoting EHP's Regulation A offering.

Overt Act No. 15: On December 7, 2020, defendant BERI wired $185,000 from a United States bank account into a Mexican bank account controlled by defendant FERNANDEZ to disguise defendant MIKULA's receipt of consideration in connection with EHP's Regulation A offering.

Overt Act No. 16: On December 8, 2020, defendant FERNANDEZ caused a Mexican shell company under his control to transmit approximately $173,841 of the payments received from defendant BERI the prior day into his personal Wells Fargo account in the United States.

Overt Act No. 17: On February 11, 2021, defendant BERI gave $2,500 in cash to defendant FERNANDEZ for the purpose of compensating defendant MIKULA for the promotion of EHP's Regulation A offering.

Overt Act No. 18: On February 17, 2021, defendant BERI wired $30,000 to a Mexican bank account, which funds reflected payments to defendants FERNANDEZ and MIKULA as consideration in connection with Palm Beach Venture's promotion of the Canadian Issuer's Regulation A offering.

Overt Act No. 19: On February 19, 2021, defendant FERNANDEZ caused a Mexican shell company under his control to wire

approximately $28,141 of the proceeds defendant BERI had transmitted two days prior into defendant FERNANDEZ's personal Wells Fargo account in the United States.

Overt Act No. 20:  On April 1, 2021, defendant FERNANDEZ sent Coconspirator 3 an "invoice" in the amount of $75,000 "for services pursuant to section 3 of the consulting agreement between BlueRock Consulting Inc. and [the Miami Issuer]," which in fact reflected payment to defendants FERNANDEZ and MIKULA for Palm Beach Venture's promotion of the Miami Issuer's Regulation A offering.

Overt Act No. 21:  On April 6, 2021, in an electronic communication to defendant FERNANDEZ and others, Coconspirator 3 requested that the Miami Issuer "please expedite" payment of the $75,000 invoice because "[t]his vendor is instrumental in our fundraising."

Overt Act No. 22:  On April 9, 2021, the Miami Issuer wired $75,000 to a Canadian entity ("Canadian Entity 2"), which funds reflected payments to defendants FERNANDEZ and MIKULA for defendant MIKULA's promotion of the Miami Issuer.

Overt Act No. 23:  On June 7, 2021, in an electronic communication, Coconspirator 4 sent defendant FERNANDEZ a spreadsheet listing entities for which defendant FERNANDEZ would document sham copyrighting activity to conceal Coconspirator 4's payments for defendant MIKULA's promotional activity on behalf of the Investment Platform.

Overt Act No. 24:  On July 1, 2021, in an electronic communication, defendant FERNANDEZ sent an invoice for $335,000 to Coconspirator 4 that purported to be for "[f]ees for services rendered pursuant to the services agreement," when in fact it

reflected an agreement to pay undisclosed compensation in exchange for defendant MIKULA's promotion of an issuer on the Investment Platform.

Overt Act No. 25:  On July 26, 2021, a Canadian entity associated with defendants MIKULA and FERNANDEZ disbursed approximately $100,000 falsely characterized as a "dividend" to a Mexican bank account controlled by defendant FERNANDEZ, which payment reflected undisclosed compensation for the Regulation A promotion of the Miami Issuer.

Overt Act No. 26:  On September 28, 2021, defendant FERNANDEZ sent an invoice for $265,000 to Coconspirator 4 requesting payment for defendant MIKULA's promotion of an issuer affiliated with the Investment Platform.

Overt Act No. 27:  On August 16, 2022, defendant FERNANDEZ sent an invoice for $125,000 to Coconspirator 4 requesting payment for defendant MIKULA's promotion of an issuer affiliated with the Investment Platform.

COUNT TWO

[15 U.S.C. §§ 77q(b), 77x; 18 U.S.C. § 2(b)]

[DEFENDANT MIKULA]

7. The United States Attorney realleges paragraphs 1 and 3 through 6 of this Information here.

8. On or about March 2, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant MIKULA, knowingly and willfully, by the use of the means and instruments of transportation and communication in interstate commerce, published, gave publicity to, and circulated, and caused to be published, given publicity to, and circulated, a circular, advertisement, article, letter, investment service and communication, namely, an article by Palm Beach Venture touting EHP titled, "Curing Incurable Diseases and Giving Us Over 4,900% Potential Gains," which, although not purporting to offer a security for sale, described such security for consideration received and to be received, directly and indirectly,

//

//

13

from an issuer, namely, EHP, without fully disclosing the receipt, past and prospective, of such consideration and the amount thereof.

                                    E. MARTIN ESTRADA
                                    United States Attorney

                                    MACK E. JENKINS
                                    Assistant United States Attorney
                                    Chief, Criminal Division

                                    BRETT A. SAGEL
                                    Assistant United States Attorney
                                    Chief, Corporate and Securities
                                       Fraud Strike Force

                                    ALEXANDER B. SCHWAB
                                    Assistant United States Attorney
                                    Deputy Chief, Corporate and
                                       Securities Fraud Strike Force

                                    ADAM P. SCHLEIFER
                                    Assistant United States Attorney
                                    Corporate and Securities Fraud
                                       Strike Force