BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
GREGG E. MARMARO (Cal. Bar No. 338627)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-8500
Facsimile: (213) 894-0142
E-mail: gregg.marmaro@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN WILLIAM MIKULA,<br><br>Defendant. | No. 2:24-CR-00063-SB-1<br><br><u>GOVERNMENT'S SENTENCING MEMORANDUM FOR DEFENDANT JONATHAN WILLIAM MIKULA</u><br><br>Hearing Date: October 21, 2025<br>Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Hon. Stanley Blumenfeld, Jr. |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Gregg E. Marmaro, hereby files its Sentencing Memorandum for defendant Jonathan William Mikula.

This Sentencing Memorandum is based upon the attached memorandum of points and authorities; the Presentence Investigation Report ("PSR") and Recommendation Letter, filed by the United States Probation and Pretrial Services Office ("USPO") (Dkts. 62 and 61, respectively); the Information (Dkt. 1); the Plea Agreement; the Change of Plea entered on March 12, 2024 (Dkt. 52); the other files and records in this case as to defendant Mikula; the files and records as to the co-defendants in this matter and to the

defendant in the related matter (No. 2:24-CR-00754-SB); and such further evidence and argument as the Court may permit.

Dated: October 7, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

/s/
GREGG E. MARMARO
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION PAGE

TABLE OF AUTHORITIES .......... ii

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. SENTENCING GUIDELINES CALCULATIONS .......... 3

IV. GOVERNMENT'S MOTION PURSUANT TO U.S.S.G. § 5K1.1 .......... 5

1. Defendant's Substantial Assistance .......... 5

2. Evaluation of Section 5K1.1(a) Factors .......... 6

V. GOVERNMENT'S ANALYSIS OF SECTION 3553(a) FACTORS AND RECOMMENDED SENTENCE .......... 7

1. Nature and Circumstances of the Offense .......... 8

2. History and Characteristics of the Defendant .......... 8

3. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public .......... 9

VI. RESTITUTION .......... 10

VII. CONCLUSION .......... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Jonathan William Mikula ("defendant") is before the Court for sentencing following his guilty plea to a two-count Information charging him with Conspiracy to Tout Securities for Undisclosed Compensation, in violation of 18 U.S.C. § 371, and Touting Securities for Undisclosed Compensation, in violation of 15 U.S.C. §§ 77q(b), 77x. Defendant participated in a conspiracy to receive undisclosed compensation in connection with the promotion of securities through a subscription investment newsletter, Palm Beach Ventures, of which he was its chief analyst. Defendant's role and responsibilities as an analyst at the newsletter included influencing and determining which securities offerings Palm Beach Venture would tout, as well as drafting promotional pieces concerning such offerings. In exchange for his promotion of issuers, defendant agreed with co-conspirators to receive direct and indirect compensation, and he materially misled subscribers that he was not receiving such compensation, which included direct compensation received through sophisticated means, as well as indirect compensation such as lavish meals, beverages, and entertainment at exclusive restaurants and clubs.

The United States Probation and Pretrial Services Office calculated a total offense level of 25 and a Criminal History Category I, yielding an advisory Guidelines range of 57-71 months' imprisonment. Those calculations are consistent with the parties' stipulated sentencing factors in the Plea Agreement. There is also a Guidelines range of one to three years' supervised release and a fine range of $20,000 to $200,000. The statutory maximum sentence is 10 years' imprisonment (five years on each count of conviction).

Defendant pleaded guilty pursuant to a written Plea Agreement, and the government has determined that defendant both complied with his obligations under the Plea Agreement and provided substantial assistance to law enforcement in the prosecution or investigation of another person, warranting a downward departure under

U.S.S.G. 5K1.1.[1] The government believes that the appropriate reduction under section 5K1.1 is three levels, bringing the offense level to 22.

For the reasons set forth below, the government believes that a sentence of 37 months' imprisonment is sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). This recommendation reflects a one-level downward variance from the Guidelines range and a sentence at the low end of the resulting range. A sentence of 37 months' imprisonment would sufficiently reflect defendant's central role in the conspiracy as well as his recidivism, balanced against his early and fulsome acceptance of responsibility and his expression of remorse. The government also requests that the Court impose a one-year period of supervised release, a fine of $20,000, and a mandatory special assessment of $100. The government further requests that the Court set a restitution hearing approximately 60 days after sentencing, pursuant to 18 U.S.C. § 3664(d)(5).

## II. FACTUAL BACKGROUND

The offense conduct is fully set forth in paragraphs 14-34 of the PSR. The government agrees with the PSR's recitation of the facts, which is also consistent with the stipulated factual basis contained in paragraph 17 of the Plea Agreement. A summary of the offense conduct is below.

For nearly three years, defendant conspired with Amit Raj Beri, Christian Fernandez, and Adam Levin, and others, to promote securities in exchange for undisclosed compensation. Defendant worked as an analyst for a subscription investment newsletter named Palm Beach Venture ("PBV"), operating in Florida, Georgia, and elsewhere, with subscribers throughout the United States including Los

---

[1] Defendant's Plea Agreement was sealed because, at the time he entered into the agreement, his cooperation was still ongoing as to uncharged individuals, and it remains sealed because it refers to certain individuals by name who have not been publicly charged. During a telephonic meet and confer on October 7, 2025, defense counsel represented that defendant does not object to the public disclosure of defendant's cooperation with the government.

Angeles. As an analyst, defendant influenced and determined which securities offerings PBV would tout, and he also drafted promotional pieces for such offerings, which included securities traded over-the-counter—i.e., not on public exchanges—and through Regulation A offerings—i.e., public offerings with more limited disclosure requirements. PBV was a valuable avenue of exposure to potential investors, and as a result, placement within and promotion by PBV allowed issuers to reach an additional pool of investors and thereby raise additional funds. In short, defendant was well-positioned to cash in from his perch as the head analyst at PBV. And as he admitted, he did.

Defendant agreed to write and place articles and other promotional pieces in PBV on at least six issuers, on the understanding and agreement that such issuers and their associates would pay compensation to him, Christian Fernandez, Raj Beri, and others. Rather than disclose, as required by securities laws, the direct and indirect compensation he and others received for the promotion of issuers in PBV, defendant caused PBV to publish promotions with the materially misleading representation that neither it "nor its affiliates receive compensation for bringing this deal to you."

Defendant was paid money by issuers, which payments were disguised as sham consulting agreements, phony invoices for services not actually rendered, shell companies, foreign bank accounts, and other sophisticated means, all to disguise the source, purpose and nature of those payments, to further the conspiracy. In addition to direct compensation, defendant received undisclosed compensation in the form of lavish meals, beverages, and entertainment at exclusive restaurants and clubs. In total, through the conspiracy, and for promotions defendant caused PBV to publish, defendant and his co-conspirators received approximately $4,272,815 in direct compensation, with additional compensation from lavish entertainment.

## III. SENTENCING GUIDELINES CALCULATIONS

The offense level computation is set forth in the PSR at paragraphs 38-58. These calculations are consistent with the stipulated sentencing factors contained in paragraph

19 of the Plea Agreement. The government agrees with the offense level determinations and has no objections to them. In summary:

- A base offense level of 6, resulting from the statutory maximum sentence applicable to the offenses of conviction;
- An 18-level increase for loss of at least $3,500,000, tied to the amount defendant caused PBV to publish and the amount of compensation he and his conspirators received;
- A two-level increase for 10 or more victims, as the government has thus far identified approximately 26 victims; and
- A two-level increase for sophisticated means, resulting from the elaborate methods defendant and conspirators used to disguise the nature, source, and purpose of the payments they received, including through sham consulting agreements, fake invoices, shell companies and foreign bank accounts.

The USPO did not apply an aggravating or mitigating role adjustment. (PSR ¶¶ 51-52.) The government agrees that none should be applied, because while defendant played a central and indispensable role in the conspiracy, he lacked the requisite authority over the activities of another criminally responsible participant.[2] Applying a three-level reduction for acceptance of responsibility, the resulting offense level is 25.

The criminal history computation is contained in paragraphs 60-64 of the PSR. The USPO placed defendant in Criminal History Category I, resulting from one prior conviction, a federal felony in 2010, for False Statements, in violation of 18 U.S.C. § 1001, in the Central District of California, for which defendant was sentenced to five years' probation and thus received one criminal history point. The government does not object to the criminal history calculation or Criminal History Category in the PSR.

[2] See, e.g., United States v. Tat, 97 F.4th 1155, 1162 (9th Cir. 2024) (to apply an aggravating role adjustment, "there must be evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime.")

Defendant's prior conviction arose from an SEC enforcement action in 2006 for violating federal securities laws in connection with unregistered securities. In that proceeding, defendant provided false statements regarding his inability to make a payment for disgorgement, which led the SEC to waive an over $100,000 disgorgement amount. The SEC thereafter sought injunctive relief, which defendant settled in 2009 and agreed to pay $200,000 in penalties and a disgorgement of $168,096.

Defendant also has pending misdemeanor charges in Georgia for driving under the influence of alcohol and related traffic violations; he has approximately nine other traffic-related violations.

## IV. GOVERNMENT'S MOTION PURSUANT TO U.S.S.G. § 5K1.1

The government has determined that defendant has both complied with his obligations under the Cooperation Plea Agreement and provided substantial assistance to law enforcement in the investigation and prosecution of another person.[3] Accordingly, the government moves for a downward departure under section 5K1.1. Below, the government summarizes defendant's substantial assistance and then evaluates his cooperation in light of the factors listed under section 5K1.1(a), which cooperation in the government's view warrants a three-level downward departure.

### 1. Defendant's Substantial Assistance

Defendant signed the plea agreement in January 2024 and entered his change of plea in March 2024. Defendant participated in three proffer sessions with the U.S. Attorney's Office and FBI, with the assistance of his counsel. Those proffers occurred

---

[3] Approximately three months after defendant entered his guilty pleas, the USPO filed an information letter and request for a modification of defendant's bond conditions, resulting from defendant's arrest in Georgia on misdemeanor charges of driving under the influence of alcohol. (Dkts. 54, 55.) The Court thereafter modified defendant's bond conditions by requiring that defendant not use excessive alcohol and submit to alcohol testing. (Dkt. 56.) Though the Plea Agreement obligated defendant to "obey all conditions of any bond," see Dkt. 18 at ¶ 2(d), the government submits that such conduct did not rise to the level of a material breach of the plea agreement or of defendant's obligations under it, and that defendant is still entitled to the benefit of his bargain.

in November 2023, February 2024, and April 2024. Across three proffer sessions, defendant provided information about a range of entities/issuers that defendant caused to be promoted in PBV, including [redacted]. Defendant also provided information about his co-conspirators [redacted].

Further, defendant provided documentation to the government regarding a list of potentially relevant individuals from whom to seek information, as well as other documentation that was obtained through open sources. The government did not meaningfully use the documentation provided by defendant. Lastly, defendant agreed to testify against the individuals referenced above.

2. Evaluation of Section 5K1.1(a) Factors

As explained below, analyzing the factors set forth in section 5K1.1(a), the government believes defendant's cooperation warrants a three-level downward departure.

First, defendant provided information about a range of entities and individuals as well as documents, but the information he provided was largely (if not entirely) already known to the government. That is because defendant was not the first person to assist in the government's investigation, and by the time defendant cooperated, the government knew much of the information defendant could provide. However, defendant was at the center of the conspiracy—in light of his position at PBV, his ability to tout issuers, and his ability to benefit financially and otherwise from that position and access. It was

therefore significant and useful for law enforcement to secure the cooperation of someone who played such an integral role in the conspiracy. See U.S.S.G. § 5K1.1(a)(2). In other words, though defendant did not occupy an aggravating role in the conspiracy, securing the cooperation from someone who was indispensable—at the conspiracy's center—was valuable in and of itself. His agreement to testify against others, even if not necessary, was also valuable.

Second, the information provided by defendant ultimately was truthful, complete, and reliable. See U.S.S.G. § 5K1.1(a)(2). However, it was not until defendant's second proffer session that he provided truthful and complete information. And further, defendant had a prior felony conviction for false statements, as well as a prior securities fraud violation, which impacted his potential value as testifying witness.

Third, the nature and extent of defendant's cooperation was, as covered above, notable and valuable but not extraordinary. See U.S.S.G. § 5K1.1(a)(3). The information he provided covered a broad range of entities and individuals, and he agreed to testify against others, though he did not participate in an undercover capacity by, for example, recording conversations or meetings with co-conspirators.

Fourth, the government is not aware of any injury, or risk of danger or injury, resulting from his assistance to law enforcement. See U.S.S.G. § 5K1.1(a)(4).

Fifth, as covered above, defendant's cooperation was not particularly timely, as he was not the first person to assist in the government's investigation.

In sum, a modest, three-level downward departure appropriately balances these factors and accounts for defendant's cooperation that was, at bottom, significant and useful given his role in the conspiracy, if not particularly timely or extraordinary.

## V. GOVERNMENT'S ANALYSIS OF SECTION 3553(a) FACTORS AND RECOMMENDED SENTENCE

Consistent with its obligations in the plea agreement to recommend a low-end sentence, the government believes that a sentence of 37 months' imprisonment—which reflects a one-level downward variance, and a sentence at the low end of the resulting

range—would be sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).[4]

1. Nature and Circumstances of the Offense

First, the nature and circumstances of the offense, and defendant's integral role in it, support the recommended sentence. In aggravation, defendant profited handsomely and was showered with lavish meals and entertainment in exchange for promoting securities in Palm Beach Venture, to the tune of millions of dollars and other benefits in undisclosed compensation. Defendant was a seasoned investment professional, and given his prior SEC case and his position as the Chief Analyst at PBV, he was inarguably aware of his disclosure obligations under securities laws. Instead, defendant leveraged his position and access at PBV to operate a sophisticated scheme that intentionally concealed from investors his remuneration in exchange for promoting issuers, in markets that were less liquid and transparent than major public markets.

In mitigation, though several individual investors suffered losses on their investments, there is no evidence that defendant or his conspirators targeted elderly or particularly vulnerable victims or caused substantial financial hardship to any victims. This is an important consideration in the government's recommended sentence. The general nature of this offense—criminal securities fraud concerning undisclosed compensation—militates in favor of a sentence at the low end of the Guidelines range.

2. History and Characteristics of the Defendant

Second, defendant has both aggravating and mitigating aspects of his history and characteristics. In aggravation is defendant's criminal history, and more specifically, he is a recidivist securities law violator with a prior federal felony conviction for lying. Defendant evidently did not learn his lesson from his prior felony conviction, for which he was sentenced to five years' probation. A sentence of over three years' imprisonment would not be greater than necessary to reflect defendant's recidivism.

---

[4] Nothing in this memorandum should be construed as advocating for a sentence other than a low-end sentence of 37 months' imprisonment.

In mitigation—and warranting in the government's view a one-level downward variance—is defendant's early and fulsome acceptance of responsibility and expression of remorse. Defendant pled guilty to a lengthy and detailed factual basis in which he admitted to his role and participation in the conspiracy and identified the individuals noted above, and he also stipulated to a slate of significant sentencing factors reflecting his conduct. Put another way, defendant's guilty pleas went far beyond the bare minimum, and he added to his acceptance of responsibility by cooperating with the government. Moreover, as reflected in the PSR, defendant offered a meaningful expression of remorse. (PSR ¶ 37.) Defendant stated, among other things, that he "deeply regret[s] the actions that led to this case," that he engaged in "harmful conduct," and that he recognizes his actions "have had far reaching consequences" personally and professionally and have jeopardized his family's security. (Id.)

While defendant had an upbringing that was more advantageous relative to many other defendants who appear in the Central District, the PSR reports that defendant experienced both physical and emotional abuse in his youth, which likely contributed to poor judgment later in his life. The PSR also reports that defendant has struggled with alcohol abuse, which, though not excusing his criminal conduct, does provide some context for the benefits he sought to receive from his position at PBV.

Further, since his bond violation in mid-2024 noted above, defendant has fully complied with his bond conditions and Court orders, providing some indication of his rehabilitation.

3. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public

Finally, a sentence of 37 months' imprisonment would adequately reflect the seriousness of the offense and provide just punishment for it. At over three years in prison, it will afford adequate deterrence to this defendant in particular, who has never served any time in prison. It would also promote respect for the law and deter other

would-be securities law offenders by sending a strong signal that violating our securities laws will bring substantial consequences.

## VI. RESTITUTION

Under the plea agreement, defendant is required to pay full restitution to victims of the offenses to which he pled guilty, including for losses suffered by any victim as a result of relevant conduct. Restitution may be ordered in this case pursuant to 18 U.S.C. § 3663(a)(1)(A).

The government has worked diligently to locate and contact individuals who may have been victims in this case. As of this filing, the government has obtained information from approximately 26 victims regarding restitution and is endeavoring to substantiate the information provided by those victims.

The government has conferred with defense counsel and represents that the parties anticipate working towards a stipulation of the restitution owed in this case. Accordingly, the government requests that the Court set a restitution hearing approximately 60 days following defendant's sentencing, with the parties' positions (or stipulation) regarding restitution to be submitted 7 days before the hearing. See 18 U.S.C. § 3664(d)(5) (Court may set a date not to exceed 90 days after sentencing to determine restitution).

## VII. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to a term of 37 months' imprisonment, a one-year period of supervised release, and a fine of $20,000, and further, that the Court set a restitution hearing in approximately 60 days on a date and time convenient for the Court.