BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
GREGG E. MARMARO (Cal. Bar No. 338627)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-8500
Facsimile: (213) 894-0142
E-mail: gregg.marmaro@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AMIT RAJ BERI,<br><br>Defendant. | No. 2:24-CR-00063-SB-3<br><br><u>GOVERNMENT'S SENTENCING MEMORANDUM FOR DEFENDANT AMIT RAJ BERI</u><br><br>Hearing Date: October 28, 2025<br>Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Hon. Stanley Blumenfeld, Jr. |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Gregg E. Marmaro, hereby files its Sentencing Memorandum for defendant Amit Raj Beri.

This Sentencing Memorandum is based upon the attached memorandum of points and authorities; the Presentence Investigation Report ("PSR") and Recommendation Letter, filed by the United States Probation and Pretrial Services Office ("USPO") (Dkts. 58 and 57, respectively); the Information (Dkt. 1); the Plea Agreement; the Change of Plea entered on February 28, 2024 (Dkt. 41); the other files and records in this case as to defendant Beri; the files and records as to the co-defendants in this matter and to the

defendant in the related matter (No. 2:24-CR-00754-SB); and such further evidence and argument as the Court may permit.

Dated: October 14, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

/s/
GREGG E. MARMARO
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. SENTENCING GUIDELINES CALCULATIONS ........ 4

IV. GOVERNMENT'S MOTION PURSUANT TO U.S.S.G. § 5K1.1 ........ 5

1. Defendant's Substantial Assistance ........ 5

2. Evaluation of Section 5K1.1(a) Factors ........ 7

V. GOVERNMENT'S ANALYSIS OF SECTION 3553(a) FACTORS AND RECOMMENDED SENTENCE ........ 8

1. Nature and Circumstances of the Offense ........ 8

2. History and Characteristics of the Defendant ........ 9

3. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public ........ 9

VI. RESTITUTION ........ 10

VII. CONCLUSION ........ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Amit Raj Beri ("defendant") is before the Court for sentencing following his guilty plea to Count One of the Information charging him with Conspiracy to Tout Securities for Undisclosed Compensation, in violation of 18 U.S.C. § 371, 15 U.S.C. §§ 77q(b) and 77x. Defendant participated in a conspiracy to pay and receive undisclosed compensation in connection with the promotion of securities through a subscription investment newsletter, Palm Beach Ventures. Defendant was a CEO of a Beverly Hills-based business named Elegance Brands, and he served as a conduit or broker between executives at issuers seeking placement in Palm Beach Ventures and his co-conspirators Mikula and Fernadez, through which he sought and received—for his co-conspirators and himself—compensation from issuers in exchange for promotion in Palm Beach. Defendant materially misled subscribers that he was not receiving or providing such compensation, which included direct compensation received through sophisticated means, as well as indirect compensation such as lavish meals, beverages, and entertainment at exclusive restaurants and clubs.

The United States Probation and Pretrial Services Office calculated a total offense level of 21 and a Criminal History Category I, yielding an advisory Guidelines range of 37-46 months' imprisonment. Those calculations are consistent with the parties' stipulated sentencing factors in the Plea Agreement. There is also a Guidelines range of one to three years' supervised release and a fine range of $15,000 to $150,000. The statutory maximum sentence is 5 years' imprisonment on the count of conviction.

Defendant pleaded guilty pursuant to a written Cooperation Plea Agreement, and the government has determined that defendant both complied with his obligations under the Plea Agreement and provided substantial assistance to law enforcement in the prosecution or investigation of another person, warranting a downward departure under

U.S.S.G. 5K1.1.[1] Defendant's cooperation was timely, multi-faceted, and significantly helpful to the investigation and prosecution of other individuals. The government accordingly believes that the appropriate reduction under section 5K1.1 is six levels, bringing the offense level to 15.

For the reasons set forth below, the government believes that a sentence of 15 months' imprisonment is sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). This recommendation reflects a one-level downward variance from the Guidelines range and a sentence at the low end of the resulting range. A sentence of 15 months' imprisonment would sufficiently reflect the nature and circumstances of defendant's criminal conduct and his important role in the conspiracy, balanced against his lack of significant criminal history, his strong expression of remorse, and his good conduct while on bond in this case. The government also requests that the Court impose a one-year period of supervised release, a fine of $15,000, and a mandatory special assessment of $100. The government further requests that the Court set a restitution hearing approximately 60 days after sentencing, pursuant to 18 U.S.C. § 3664(d)(5).

## II. FACTUAL BACKGROUND

The offense conduct is fully set forth in paragraphs 14-30 of the PSR. The government agrees with the PSR's recitation of the facts, which is also consistent with the stipulated factual basis contained in paragraph 14 of the Plea Agreement. A summary of the offense conduct is below.

Defendant conspired with Jonathan William Mikula, Christian Fernandez, and others to cause issuers to pay undisclosed compensation to himself, Mikula, and

[1] Defendant's Plea Agreement was sealed because, at the time he entered into the agreement, his cooperation was still ongoing as to uncharged individuals, and it remains sealed because it refers to certain individuals by name who have not been publicly charged. During a telephonic meet and confer on October 13, 2025, defense counsel represented that defendant does not object to the public disclosure of defendant's cooperation with the government.

Fernandez in connection with Mikula's promotion of those issuers' securities in Palm Beach Venture ("PBV")—a subscription investment newsletter operating in Florida, Georgia, and elsewhere, with subscribers throughout the United States including in Los Angeles—of which Mikula was its chief analyst. PBV published promotional pieces for offerings of securities, which included securities traded over-the-counter—i.e., not on public exchanges—and through Regulation A offerings—i.e., public offerings with more limited disclosure requirements. PBV was a valuable avenue of exposure to potential investors, and as a result, placement within and promotion by PBV allowed issuers to reach an additional pool of investors and thereby raise additional funds.

In October 2019, defendant succeeded in getting Elegance Brands promoted in PBV. Thereafter, he began to contact executives at other issuers, connect them with Mikula and Fernandez, and negotiate and effect deals between those issuers and Mikula and Fernandez—acting, in essence, as a broker or conduit. The deals were to have those issuers provide direct monetary and indirect entertainment compensation in exchange for Mikula's promotion of those issuers' offerings, all of which would be concealed from investors. Defendant also provided undisclosed compensation to Mikula in exchange for defendant's promotion and touting of securities issuances with which they were associated.

Defendant and Fernandez, and others, used sophisticated means—including sham consulting agreements, phony invoices for services not actually rendered, shell companies, foreign bank accounts, and others—to disguise the source, purpose and nature of those payments, to further the conspiracy. Through his participation in the conspiracy, and for promotions and undisclosed compensation defendant negotiated and effected, defendant caused at least three issuers to provide undisclosed compensation totaling $2,066,313 to defendant and other conspirators, as well as 100,000 shares of one of those issuers valued at $600,000 to defendant's brother. Defendant himself received at least $860,304.46 in such undisclosed monetary compensation. Indirect compensation included lavish meals, beverages, and entertainment at exclusive restaurants and clubs.

## III. SENTENCING GUIDELINES CALCULATIONS

The offense level computation is set forth in the PSR at paragraphs 34-51. These calculations are consistent with the stipulated sentencing factors contained in paragraph 16 of the Plea Agreement. The government agrees with the offense level determinations and has no objections to them. In summary:

- A base offense level of 6, resulting from the statutory maximum sentence applicable to the offenses of conviction;
- A 16-level increase for loss of at least $1,500,000, tied to the amount of undisclosed compensation defendant caused issuers to provide ($2,066,313);
- A two-level increase for 10 or more victims, as the government has thus far identified approximately 26 victims; and
- A two-level increase for sophisticated means, resulting from the elaborate methods defendant and conspirators used to disguise the nature, source, and purpose of the payments they engineered, including through sham consulting agreements, fake invoices, shell companies and foreign bank accounts.

The USPO did not apply an aggravating or mitigating role adjustment. (PSR ¶¶ 43-44.) The government agrees that none should be applied, because while defendant played an important broker/conduit role in the conspiracy, he lacked the requisite authority over the activities of another criminally responsible participant.[2] Applying a three-level reduction for acceptance of responsibility, and an additional two-level reduction for zero-point offender, the resulting offense level is 21.

---

[2] See, e.g., United States v. Tat, 97 F.4th 1155, 1162 (9th Cir. 2024) (to apply an aggravating role adjustment, "there must be evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime.")

The criminal history computation is contained in paragraphs 55-56 of the PSR. The USPO placed defendant in Criminal History Category I, resulting from no prior convictions in the United States.[3] The government does not object to the criminal history calculation or Criminal History Category in the PSR.

## IV. GOVERNMENT'S MOTION PURSUANT TO U.S.S.G. § 5K1.1

The government has determined that defendant has both complied with his obligations under the Cooperation Plea Agreement and provided substantial assistance to law enforcement in the investigation and prosecution of another person. Accordingly, the government moves for a downward departure under section 5K1.1. Below, the government summarizes defendant's substantial assistance and then evaluates his cooperation in light of the factors listed under section 5K1.1(a), which cooperation in the government's view warrants a six-level downward departure.

### 1. Defendant's Substantial Assistance

**Summary**: Defendant signed the plea agreement in January 2024 and entered his change of plea in February 2024. For over a year before then, and continuing to the present, defendant cooperated in several ways in the government's case. Defendant cooperated quicky and was very cooperative throughout the investigation, including by providing historical information and by proactively offering potential cooperation opportunities to the government, which included consensual recordings with subjects and targets. Defendant timely forwarded any relevant communications with subjects and targets and provided the government with other relevant documentation.

**Proffers**: Defendant participated in four proffer sessions with the U.S. Attorney's Office and SEC and FBI, with the assistance of his counsel. Those proffers occurred in December 2022, August 2023, December 2023, and March 2025.

[3] The PSR notes that defendant has two prior drunk driving offenses in Australia, for which his license was suspended for periods of three and six months. Those foreign convictions—which did not result in any term of imprisonment—were not scored in defendant's criminal history. (PSR ¶ 55.)

Across four proffer sessions, defendant provided information about a range of entities/issuers that defendant worked to be promoted in PBV in exchange for compensation. These topics included [redacted]

**Undercover activities**: Defendant made several recorded calls prior to his entry into the plea agreement and was provided a recording device by the FBI at defense counsel's request. Defendant offered proactively to engage in these recordings, without request or prompting from the government. These recorded calls covered in particular [redacted].

**Provision of documents and communications**: Defendant also provided documentation, particularly emails and text messages he had received from [redacted]. This documentation as helpful to the government's investigation of [redacted]. Defendant provided this documentation voluntarily and proactively. Defendant also agreed to testify against the individuals referenced above.

**Guilty pleas of co-conspirators**: Given the timing of defendant's cooperation—after Fernandez's, but before Mikula's and Levin's—Beri's cooperation contributed to the guilty pleas of those latter co-conspirators. [redacted].

2. Evaluation of Section 5K1.1(a) Factors

As explained below, analyzing the factors set forth in section 5K1.1(a), the government believes defendant's cooperation warrants a six-level downward departure.

First, defendant's cooperation was significant and useful. See U.S.S.G. § 5K1.1(a)(1). His cooperation was multi-faceted—consisting of proffers, recordings, and documents—and it spanned multiple individuals and entities. Given defendant's role as a broker/conduit between issuers and Mikula, he was uniquely positioned to provide important information about the criminal conspiracy.

Second, the information provided by defendant was truthful, complete, and reliable. See U.S.S.G. § 5K1.1(a)(2). While the government believes defendant initially minimized his role during his initial proffer, he was truthful and complete in all subsequent interactions, and the information defendant provided was useful and was corroborated by other evidence (including the recordings he proactively obtained and the documents he volunteered).

Third, the nature and extent of defendant's cooperation was, as covered above, multi-faceted and extensive. See U.S.S.G. § 5K1.1(a)(3). Defendant provided helpful information about co-conspirators and helped to prompt those conspirators' guilty pleas, engaged in undercover activities including recording conversations, and provided useful emails, text messages and other documents about a range of relevant parties.

Fourth, the government is not aware of any injury, or risk of danger or injury, resulting from his assistance to law enforcement. See U.S.S.G. § 5K1.1(a)(4).

Fifth, as covered above, defendant's cooperation was timely. See U.S.S.G. § 5K1.1(a)(5). Even though he was not the first person to assist in the government's investigation, it was timely enough to meaningfully assist in the ongoing investigation, including the SEC's parallel investigations and enforcement actions.

In sum, a six-level downward departure appropriately balances these factors and accounts for defendant's cooperation that was significant, timely, and helpful to the government's investigation and prosecution of others.[4]

## V. GOVERNMENT'S ANALYSIS OF SECTION 3553(a) FACTORS AND RECOMMENDED SENTENCE

Consistent with its obligations in the plea agreement to recommend a low-end sentence, the government believes that a sentence of 15 months' imprisonment—which reflects a one-level downward variance, and a sentence at the low end of the resulting range after the 5K departure requested above—would be sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).[5]

### 1. Nature and Circumstances of the Offense

First, the nature and circumstances of the offense, and defendant's important role in it, support the recommended sentence. In aggravation, defendant profited handsomely—both in direct compensation, and in lavish meals and entertainment—that he sought out for himself and also helped steer to others—in exchange for Mikula's promotion of securities in Palm Beach Venture. Defendant helped connect executives to Mikula, and he leveraged that valuable position as a broker and conduit to operate a sophisticated scheme that intentionally concealed from investors his remuneration in exchange for promoting issuers, in markets that were less liquid and transparent than major public markets.

---

[4] The government recommended a three-level downward departure under section 5K1.1 for co-defendant Mikula.

[5] Nothing in this memorandum should be construed as advocating for a sentence other than a low-end sentence of 15 months' imprisonment.

In mitigation, though several individual investors suffered losses on their investments, there is no evidence that defendant or his conspirators targeted elderly or particularly vulnerable victims or caused substantial financial hardship to any victims. This is an important consideration in the government's recommended sentence. The general nature of this offense—criminal securities fraud concerning undisclosed compensation—militates in favor of a sentence at the low end of the Guidelines range.

2. History and Characteristics of the Defendant

Second, defendant has mitigating aspects in his history and characteristics. He has no substantial criminal history, save for two DUI offenses in Australia which resulted in a suspended license. This is a significant factor distinguishing Beri from Mikula—who has a prior federal felony conviction in this district and is a recidivist securities law violator.

Further, defendant had a strong and sincere expression of remorse for his criminal conduct, writing that he had "deep remorse" for his crime, for which he reiterated there is "no excuse" and expressed "regret" and "enormous remorse and pain." (Dkt. 103-2.) Defendant also discussed the myriad ways his conduct has negatively impacted his family and others around him, which shows an acceptance of and recognition for his wrongdoing and points towards a positive direction for rehabilitation.

Moreover, defendant has fully complied with his bond conditions and Court orders. While defendant's lack of criminal history is accounted for in a zero-point offender reduction, his good behavior on bond, coupled with his largely clean record and his strong expression of remorse, taken together warrant in the government's view a one-level downward variance under section 3553(a).

3. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public

Finally, a sentence of 15 months' imprisonment would adequately reflect the seriousness of the offense and provide just punishment for it. At over a year in prison, it

will afford adequate deterrence to this defendant in particular, who has never served any time in prison. It would also promote respect for the law and deter other would-be securities law offenders by sending a strong signal that violating our securities laws will bring substantial consequences, and it will also encourage other such would-be violators to cooperate early and fully with the government.

## VI. RESTITUTION

Under the plea agreement, defendant is required to pay full restitution to victims of the offenses to which he pled guilty, including for losses suffered by any victim as a result of relevant conduct. Restitution may be ordered in this case pursuant to 18 U.S.C. § 3663(a)(1)(A).

The government has worked diligently to locate and contact individuals who may have been victims in this case. As of this filing, the government has obtained information from approximately 26 victims regarding restitution and is endeavoring to substantiate the information provided by those victims.

The government has conferred with defense counsel and represents that the parties anticipate working towards a stipulation of the restitution owed in this case. Accordingly, the government requests that the Court set a restitution hearing approximately 60 days following defendant's sentencing, with the parties' positions (or stipulation) regarding restitution to be submitted 7 days before the hearing. See 18 U.S.C. § 3664(d)(5) (Court may set a date not to exceed 90 days after sentencing to determine restitution).

## VII. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to a term of 15 months' imprisonment, a one-year period of supervised release, and a fine of $15,000, and further, that the Court set a restitution hearing in approximately 60 days on a date and time convenient for the Court.